IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SAMANTHA LOUISE COUNTS,

                    Plaintiff,

vs.                                    Case No. 10-4092-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).   The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On January 11, 2010, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 12-21).  Plaintiff alleges that she has been disabled since May 31, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through the date of the ALJ decision (R. at 12).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 13). At step two, the ALJ found that plaintiff had the following

4

severe impairments: borderline intellectual functioning; history
of attention deficit disorder (ADD); a mood disorder, not
otherwise specified; and a generalized anxiety disorder (R. at
13).  At step three, the ALJ determined that plaintiff's
impairments do not meet or equal a listed impairment (R. at 13).
After determining plaintiff's RFC (R. at 19), the ALJ found at
step four that plaintiff is able to perform past relevant work
(R. at 19).  In the alternative, at step five, the ALJ found that
plaintiff could perform other jobs that exist in significant
numbers in the national economy (R. at 19-20).  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 20).

**III.  Did the ALJ err in his consideration of plaintiff's mental
health treatment?**

In his decision, the ALJ stated the following:

> Although claimant has testified to an
> inability to work since May 31, 2007, because
> of debilitating mental symptoms, the record
> points to sporadic mental health treatment
> for claimant since that date. There are no
> records of any consistent psychotherapy or
> psychiatric hospitalizations for claimant for
> the period at issue. Additionally, when seen
> for a consultative psychological evaluation
> in November 2007, claimant at that time noted
> no history of inpatient or outpatient mental
> health treatment (Exhibit 2F/l). When seen at
> Valeo on December 26, 2007, claimant reported
> that she had had no mental health treatment
> in the past (Exhibit 5F/37). It is noted that
> the treatment records for claimant for 2008
> are very sparse. Case law has held that a
> lack of treatment is a basis for discounting
> subjective complaints. Even infrequent

5

> treatment is a basis for discounting
> complaints.

(R. at 15).  The ALJ clearly gives great weight to the fact that plaintiff did not seek mental health treatment prior to December 2007.  Furthermore, after plaintiff began mental health treatment, the ALJ states that the treatment records for 2008 are very sparse.  The ALJ discounts plaintiff's complaints because of a lack of treatment or infrequent treatment.  Later in his decision, the ALJ again noted plaintiff's "sporadic" mental health treatment as a reason for finding that her mental impairments do not prevent her from working (R. at 16).  At another point, the ALJ discounted the opinions of Ms. Hurn, a mental health therapist, because her opinions were not consistent with plaintiff's "sporadic mental health treatment" (R. at 18).

The ALJ states that case law has held that a lack of treatment is a basis for discounting subjective complaints (R. at 15).  However, the ALJ's statement of the law is incomplete.  SSR 96-7p states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the
> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. However, the adjudicator must
> not draw any inferences about an individual's
> symptoms and their functional effects from a
> failure to seek or pursue regular medical
> treatment without first considering any
> explanations that the individual may provide,

6

> <u>or other information in the case record, that</u>
> <u>may explain infrequent or irregular medical</u>
> <u>visits or failure to seek medical treatment.</u>
> <u>The adjudicator may need to recontact the</u>
> <u>individual or question the individual at the</u>
> <u>administrative proceeding in order to</u>
> <u>determine whether there are good reasons the</u>
> <u>individual does not seek medical treatment or</u>
> <u>does not pursue treatment in a consistent</u>
> <u>manner. The explanations provided by the</u>
> <u>individual may provide insight into the</u>
> <u>individual's credibility.</u>

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); <u>cited with</u>
<u>approval in</u> <u>Madron v. Astrue</u>, 311 Fed. Appx. 170, 178 (10th Cir.
Feb. 11, 2009).[1]  In the case of <u>Kratochvil v. Barnhart</u>, 2003 WL
22176084 at *5 (D. Kan. Sept. 17, 2003), the court held that
while failure to seek treatment or therapy may be probative of
severity, the ALJ had failed to ask the claimant why she did not
undergo counseling or therapy earlier.  The court noted that the
ALJ had a basic duty of inquiry, to fully and fairly develop the
record as to material issues.  The ALJ had an opportunity at two
administrative hearings to ask the claimant about this, but did
not.  As the court noted in <u>Kratochvil</u>, 2003 WL 22176084 at *5
n.21, a person suffering from mental difficulties may be unable
to recognize the need to seek treatment.  <u>Caldwell v. Sullivan</u>,
736 F. Supp. 1076, 1082 (D. Kan. 1990).

   The court has reviewed the transcript of plaintiff's

---

[1]SSR rulings are binding on an ALJ.  20 C.F.R. §
402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S.
Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>,
992 F.2d 1118, 1120 (10th Cir. 1993).

testimony (R. at 26-45).  At no time was plaintiff asked why she did not seek treatment earlier, or why her treatment was sparse or infrequent.  Therefore, the ALJ failed to comply with SSR 96-7p and failed to meet his basic duty of inquiry by fully and fairly developing the record on this issue.

Furthermore, the references to "sporadic," " very sparse," or "infrequent" treatment fail to accurately reflect the treatment record once treatment began in December 2007. Plaintiff began treatment at Valeo Behavioral Health Care with an intake assessment on December 26, 2007 (R. at 330-336). Following her initial intake assessment, the records from Valeo include treatment notes on the following dates:

            Jan. 10, 2008
            Jan. 31, 2008
            Feb. 25, 2008
            Mar.  5, 2008
            Mar. 20, 2008
            Mar. 24, 2008
            Mar. 31, 2008
            Apr. 17, 2008
            Apr. 21, 2008

            Aug. 14, 2008
            Sep. 11, 2008
            Nov.  6, 2008
            Dec. 17, 2008
            Jan. 15, 2009
            Jan. 21, 2009
            Feb. 12, 2009
            Feb. 19, 2009
            Mar. 19, 2009
            Mar. 26, 2009
            Apr. 16, 2009
            Apr. 23, 2009
            May   7, 2009
            Jun.  9, 2009

```
Jun. 25, 2009
Jul.  7, 2009
Jul. 30, 2009
Aug.  6, 2009
Aug. 20, 2009
```

(R. at 315-346, 400-450).  Thus, the record shows 10 intake,
diagnostic, or treatment notes between Dec. 26, 2007 and April
21, 2008.  After approximately a four month gap in treatment, the
record shows 19 treatment notes from Aug. 14, 2008 through Aug.
20, 2009.  The treatment notes, except for a four month gap in
treatment, do not reflect sporadic, very sparse, or infrequent
treatment once treatment began in December 2007.  Furthermore,
the ALJ failed in her duty to ascertain any reasons for
plaintiff's failure to seek treatment before December 2007, or
for the gap in treatment in 2008.

**IV.  Did the ALJ err in his consideration of plaintiff's daily
activities?**

The ALJ indicated that although plaintiff testified to a
very limited lifestyle at the hearing, plaintiff noted a variety
of activities of daily living in her function or activities
report (R. at 14).  The ALJ then summarized function reports
prepared by the plaintiff (R. at 197-204) and by plaintiff's
mother (R. at 207-214) (R. at 14-15).  The ALJ concluded that
plaintiff's daily activities were inconsistent with subjective
symptoms precluding work (R. at 15); the ALJ also relied on the
two function reports as a basis for discounting the opinions of

9

Dr. Mintz, who opined that plaintiff was mildly mentally retarded
and suffered from depression (R. at 293-296) (R. at 17).

However, the ALJ failed to mention that plaintiff indicated
in her function report that she has problems with memory,
completing tasks, concentration, understanding, following
instructions, and getting along with others.  She stated that it
is hard for her to concentrate, that it takes a lot for her to
understand things, that she is distracted very easily (R. at 202)
and she cannot handle stress at all (R. at 203).  The ALJ also
failed to mention that plaintiff's mother indicated that her
daughter has problems with memory, completing tasks,
concentration, understanding, following instructions, and getting
along with others.  Plaintiff's mother stated that her daughter
no longer has a social life, has trouble understanding, cannot
follow simple instructions, cannot concentrate on one thing for
too long, and is bad at completing tasks (R. at 212).

The importance of considering plaintiff's limitations in her
daily activities was highlighted in two recent decisions in the
10th Circuit which found error when the ALJ mischaracterized the
extent of plaintiff's daily activities, ignoring the
qualifications and limitations that were reported.  Krauser v.
Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Sitsler v.
Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011).
In Sitsler, the court determined that the ALJ's findings

10

regarding the claimant's activities did not include numerous

limitations.  The court then stated:

> We have criticized this form of selective and
> misleading evidentiary review, holding that
> an ALJ cannot use mischaracterizations of a
> claimant's activities to discredit his claims
> of disabling limitations. See Sisco v. U.S.
> Dep't of Health & Human Servs., 10 F.3d 739,
> 742-43 (10th Cir.1993) (ALJ took claimant's
> testimony out of context, selectively
> acknowledged only parts of her statements,
> and presented his findings as accurate
> reflections of her statements); see also
> Talbot v. Heckler, 814 F.2d 1456, 1462, 1464
> (10th Cir.1987) (ALJ improperly based
> conclusion claimant could do light work on
> mischaracterization of his activities).

Sitsler, 410 Fed. Appx. at 117-118.

Furthermore, according to the regulations, activities such

as taking care of yourself, household tasks, hobbies, therapy,

school attendance, club activities or social programs are

generally not considered to constitute substantial gainful

activity.  20 C.F.R. § 404.1572(c) (2010 at 396).  Furthermore,

although the nature of daily activities is one of many factors to

be considered by the ALJ when determining the credibility of

testimony regarding pain or limitations, Thompson v. Sullivan,

987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind

that the sporadic performance of household tasks or work does not

establish that a person is capable of engaging in substantial

gainful activity.  Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131

(8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time**

**competitive work.' "** Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In the case before the court, the ALJ erred because she mischaracterized plaintiff's daily activities by failing to mention any of the limitations noted by plaintiff and her mother in their reports.  Furthermore, the ALJ should have considered that the fact that plaintiff maintains her home and does her best to engage in ordinary life activities is not inconsistent with complaints of limitations, and in no way directs a finding that plaintiff is able to work.  Therefore, this case shall be remanded in order for the ALJ to reconsider the nature and extent of plaintiff's daily activities, including her limitations as set forth in the two reports, and make new findings regarding plaintiff's credibility and the opinions of Dr. Mintz.

**V.  Did the ALJ err in his evaluation of the opinions of Dr.
Mintz, a consultative examiner, and Ms. Hurn, plaintiff's
treating therapist?**

Dr. Mintz performed a psychological evaluation on the
plaintiff on November 13, 2007, including testing, and prepared a
report.  He found that IQ testing showed a full scale IQ of 62, a
verbal IQ of 67, and a performance IQ of 60.  Testing on
plaintiff's academic skills were found by Dr. Mintz to be
consistent with the IQ scores.  He diagnosed plaintiff with
depressive disorder and mild mental retardation.  He also stated
that he thought plaintiff could do basic work (R. at 293-296).

The ALJ gave little weight to the opinions of Dr. Mintz (R.
at 17-18).  One reason for discounting his opinions was the ALJ's
finding, noted above, that the reports of plaintiff and her
mother indicated an activity level inconsistent with his opinions
(R. at 17).  However, for the reasons set forth above, the ALJ
will have to reevaluate the opinions of Dr. Mintz after giving
proper consideration to her daily activities, including her
limitations.

The court will briefly discuss some of the other issues
discussed by the parties regarding the opinions of Dr. Mintz.
The ALJ did not expressly cite to any other medical evidence
disputing the opinion of Dr. Mintz that plaintiff was not
mentally retarded.  A person with an IQ of 60-70 could meet

14

listed impairment 12.05C (12.05 is the listed impairment for mental retardation) if they met the other requirements of 12.05C. However, the ALJ indicated that he gave significant weight to the state agency assessment prepared by Dr. Witt (R. at 20).  Dr. Witt opined that plaintiff was not mentally retarded, noting that she had not been in special education in school.  He opined that plaintiff's functioning was consistent with a borderline range of intellectual functioning (R. at 309).  Furthermore, Ms. Hurn, plaintiff's therapist, opined in two reports that plaintiff did not have a low I.Q. or reduced intellectual functioning (R. at 370, 376).  However, this opinion by Ms. Hurn was not mentioned by the ALJ.  Therefore, when the ALJ reevaluates the opinions of Dr. Mintz on remand, she should consider and discuss the opinions of Dr. Witt and Ms. Hurn regarding plaintiff's IQ in determining what weight to give to the opinion of Dr. Mintz that plaintiff is mentally retarded.  The ALJ should also make a finding regarding whether plaintiff's impairment meets or equals 12.05C.

The ALJ also failed to mention a vocational assessment prepared on November 28, 2007 (R. at 154-173).  The assessment found that plaintiff was in the 3rd percentile in general learning ability and verbal aptitude, and in the 4th percentile in numerical aptitude (R. at 155).  Other testing showed a reading grade level of 7.0 and a math grade level of 3.0 (R. at 156).  Plaintiff argues that these findings support the findings

of Dr. Mintz.[2]

First, the record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.  Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008).  The court must make sure that the ALJ gave the relevant evidence due consideration.  Andersen v. Astrue, 319 Fed. Appx. 712, 721 (10th Cir. Apr. 3, 2009).  The court finds that the vocational assessment is significantly probative evidence because plaintiff presents a reasonable argument that it could provide some support for the opinions of Dr. Mintz; therefore it should have been considered by the ALJ.  Second, the court will not engage in the task of weighing this evidence in the first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998).  Therefore, on remand, the ALJ should consider the vocational assessment, and determine what support, if any, it provides to the opinions of Dr. Mintz.

---

[2]Testing by Dr. Mintz showed plaintiff's reading fluency at grade equivalent 3.0 and math fluency at 5.6; Dr. Mintz found that plaintiff's academic skill levels were consistent with the IQ scores (R. at 295).

16

The record also contains two mental impairment
questionnaires filled out by Ms. Hurn, plaintiff's treating
therapist.  The first questionnaire was filled out on November
19, 2008 (R. at 368-373); the second one was filled out on August
18, 2009 (R. at 374-379).  In the first questionnaire, Ms. Hurn
opined that plaintiff's mental ability and aptitude needed to do
unskilled work was "poor or none" in 8 of 16 categories (R. at
372).[3]  In the second questionnaire, Ms. Hurn opined that
plaintiff's mental ability and aptitude needed to do unskilled
work was "poor or none" in 11 of the 16 categories (R. at 379).

The ALJ gave her opinions little weight because: 1) she is
not an acceptable medical source, but only an "other" source, 2)
her opinions are not consistent with the totality of the medical
evidence, 3) they are not consistent with the GAF scores, 4) they
are not consistent with plaintiff's "sporadic" mental health
treatment, and 5) they are not consistent with plaintiff's
demonstrated level of functioning during the period at issue (R.
at 18).  The first reason given for discounting her opinion is
that she is not an acceptable medical source, but only a
therapist.

The term "medical sources" refers to both "acceptable
medical sources" and other health care providers who are not

_____

[3]Ms. Hurn failed to indicate the extent of plaintiff's
limitations in 4 of the 16 categories on this form (R. at 372).

"acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at *1.
"Acceptable medical sources" include licensed physicians and
licensed or certified psychologists.  20 C.F.R.
§ 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.  Evidence is needed
from an "acceptable medical source" indicating that a claimant
has a medically determinable impairment.  20 C.F.R. 404.1513(a).

A therapist is not an "acceptable medical source" under the
regulations.  20 C.F.R. § 404.1513(a).  However, evidence from
"other medical sources," including a therapist, may be based on
special knowledge of the individual and may provide insight into
the severity of an impairment and how it affects the claimant's
ability to function.  Opinions from other medical sources are
important and should be evaluated on key issues such as
impairment severity and functional effects, along with the other
relevant evidence in the file.  The fact that an opinion is from
an "acceptable medical source" is a factor that may justify
giving that opinion greater weight than an opinion from a medical
source who is not an "acceptable medical source" because
"acceptable medical sources" are the most qualified health care
professionals.  However, depending on the particular facts in a
case, and after applying the factors for weighing opinion
evidence, an opinion from a medical source who is not an
"acceptable medical source" may outweigh the opinion of an
"acceptable medical source," including the medical opinion of a

treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.

It is not clear whether the ALJ considered the opinions of Ms. Hurn in light of SSR 06-03p.  In light of the fact that this case is being remanded for other reasons, the ALJ is directed to consider the opinion of Ms. Hurn in light of SSR 06-03p.  The ALJ should specifically consider the length, nature and extent of the treatment relationship, and the frequency of examination.

The ALJ also discounted the opinions of Ms. Hurn because they are not consistent with the medical evidence, including her sporadic mental health treatment.  First, the court has already found that the ALJ erred by referring to plaintiff's mental health treatment as sporadic.  Second, the ALJ erred by stating this in conclusory fashion, without reference to those portions of the record with which her opinions were allegedly inconsistent.  Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004). As the court stated in Krauser, it may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ herself to do in the proceedings on remand.  365 F.3d at 1331.

The ALJ also discounted the opinions of Ms. Hurn because they are not consistent with plaintiff's demonstrated level of functioning.  To the extent that the ALJ is relying on her

19

mischaracterization of the function reports from plaintiff and her mother in making this finding, which the court found to be in error, *supra*, the ALJ will need to reevaluate plaintiff's level of functioning and its consistency or lack of consistency with the opinions of Ms. Hurn after taking into account plaintiff's daily activities and limitations in light of all the evidence, including the limitations set forth in the two reports.

Finally, the ALJ's findings only mentioned and referenced Ms. Hurn's first assessment in November 2008 (R. at 18); the ALJ never mentioned Ms. Hurn's second assessment in August 2009, after a number of additional treatment sessions.  An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d at 1215.  On remand, the ALJ must consider both assessments by Ms. Hurn.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 9th day of August 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge